```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/5/2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ANTHONY PAPETTI, *on behalf of himself and all others similarly situated*,

                             Plaintiff,

               -v-

RAWLINGS FINANCIAL SERVICES, LLC and
JOHN DOES 1–25,

                             Defendants.

------------------------------------------------------------------X

15 Civ. 2933 (PAE)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

       Plaintiff Anthony Papetti alleges that, in February 2015, defendant Rawlings Financial Services, LLC ("RFS") sent him a debt collection letter that violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*[1] The thrust of Papetti's claim is that RFS's debt collection letter was misleading and confusing, and that the portion of the letter in which RFS demanded payment from him overshadowed the portion in which RFS informed him of his right to dispute the debt. Papetti filed a putative class action Complaint on behalf of himself and other similarly situated individuals. RFS now moves to dismiss the Complaint in its entirety for failure to state a claim. For the reasons that follow, RFS's motion is denied.

---

[1] Papetti sues not only RFS, but also "John Does 1–25." The "John Doe" defendants are placeholders; if the Complaint survives this motion to dismiss, Papetti intends to substitute defendants whose identities are disclosed in discovery. *See* Dkt. 1 ("Compl."), ¶ 10. Thus, this opinion speaks of only one defendant, RFS.

I.     **Background**

    A.     **Factual Background**[2]

On October 2, 2014, Papetti's health insurance plan with Oxford Health Plans ("Oxford") was terminated; he then substituted Horizon Blue Cross Blue Shield of New Jersey ("Horizon") as his primary health insurance provider. Dkt. 16. On November 9, 2014 and again on November 24, 2014, Papetti filled a prescription at Duane Reade Pharmacy ("Duane Reade"). Compl. ¶¶ 17–18. For reasons unknown to Papetti, Duane Reade mistakenly submitted his claims to his former insurer, Oxford, rather than his current insurer, Horizon. *Id.* ¶ 20. Oxford in turn paid these claims. *Id.* ¶ 21.

As a result, Papetti incurred an obligation to Oxford, which became due some time before February 6, 2015. *Id.* ¶¶ 23–24. Once the obligation became overdue, Oxford, as the creditor, transferred the obligation to a debt collector, RFS. *Id.* ¶¶ 26–27. On February 6, 2015, RFS sent Papetti two documents enclosed in a single envelope. *Id.* ¶¶ 28, 38. The first was a debt collection letter, *see* Dkt. 1, Ex. A ("Debt Collection Letter"), which is reproduced below.

---

[2] The background facts are drawn from the Complaint and the exhibits attached thereto, *see* Dkt. 1, Ex. A ("Debt Collection Letter"); Ex. B ("Validation Notice"). For the purpose of resolving the motion to dismiss, the Court assumes all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff, Papetti. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

**Rawlings Financial Services** LLC
PHARMACY DIVISION

POST OFFICE BOX 2020
LAGRANGE, KENTUCKY 40031-2020

## AUDIT NOTICE – ACCOUNT OVERDUE

February 6, 2015

Anthony Papetti

Amount Due: $ 696.62
Termination Date: 10/02/2014
Reference Number: ▮48

Dear Anthony Papetti,

You were previously notified that an audit of paid claims identified that your prescription drug card was used for benefits after your coverage ended with Oxford. **Since you were not eligible for prescription plan benefits on these fill dates, Oxford is due full reimbursement of the amounts paid.** As of this letter date we have not yet received payment.

If you were insured by another health plan on these dates of fill, we suggest you use one of the following methods to correct this billing error or obtain reimbursement. We have provided the prescription claim information on the reverse side of this notice to assist you.

**Method #1 - Contact the pharmacy that filled the prescription to correct the billing:**
- Notify your pharmacist of this billing error and request to have the claims reversed to Oxford and billed to the insurance carrier that provided coverage on these dates of fill.
- Obtain a printout from the pharmacy indicating the claims were reversed, and return this with the payment stub below and write "billing corrected by pharmacy" on the payment stub.

**Method #2 – Make payment to Oxford using the payment stub below and submit the claims to your new insurance carrier for reimbursement:**
- Contact your new insurance carrier that should have paid for these prescription claims and obtain a member reimbursement prescription claim form. Submit these claims to your new carrier for reimbursement.

If you did not have health insurance coverage during these dates of fill, Oxford has also asked Rawlings to process reimbursements due. Please contact Rawlings at 1-877-426-4185, Monday – Friday between 8:00 a.m. and 6:00 p.m. (Eastern Time) to discuss the payment options available to you. Thank you for your prompt attention to this matter.

SEE REVERSE SIDE FOR IMPORTANT INFORMATION
------------------ DETACH HERE AND RETURN WITH PAYMENT ------------------
**CREDIT CARD PAYMENTS ACCEPTED – CALL 1-877-426-4185**

**Amount Due:** $ 696.62
**Reference Number:** ▮48

February 6, 2015

Anthony Papetti

Oxford
c/o Rawlings Financial Services LLC
P.O. Box 2020
LaGrange, KY 40031-2020

P

*Id.*

3

As is evident, the debt collection letter was printed on RFS letterhead, and was addressed to Anthony Papetti. *Id.* At the top, the letter's header stated, in bolded capital letters: "**AUDIT NOTICE – ACCOUNT OVERDUE**". *Id.* The letter informed Papetti that "**Oxford is due full reimbursement of the amounts paid**." *Id.* The letter then stated that, if Papetti was insured by another health plan at the time he filled his prescriptions, RFS "suggest[ed]" the following methods for "correct[ing a] billing error or obtain[ing] reimbursement," *id.*:

> **Method #1 – Contact the pharmacy that filled the prescription to correct the billing:**
> - Notify your pharmacist of this billing error and request to have the claims reversed to Oxford and billed to the insurance carrier that provided coverage on these dates of fill.
> - Obtain a printout from the pharmacy indicating the claims were reversed, and return this with the payment stub below and write "billing corrected by pharmacy" on the payment stub.
>
> **Method #2 – Make payment to Oxford using the payment stub below and submit the claims to your new insurance carrier for reimbursement:**
> - Contact your new insurance carrier that should have paid for these prescription claims and obtain a member reimbursement prescription claim form. Submit these claims to your new carrier for reimbursement.

*Id.* The debt collection letter then said, "If you did not have health insurance coverage during these dates of fill, Oxford has also asked Rawlings to process reimbursements due," and thereafter directed the recipient to contact RFS by calling the telephone number provided to "discuss the payment options available." *Id.*

The substance of the debt collection letter ended by instructing the recipient to "**SEE REVERSE SIDE FOR IMPORTANT INFORMATION**." *Id.* But the reverse side was, in fact, blank. Compl. ¶ 37.

Finally, at the very bottom, the debt collection letter included a detachable section, which instructed the recipient to detach it, include payment of the obligation, and return it to RFS. *See* Debt Collection Letter.

4

The second document sent by RFS to Papetti was a validation notice, which read as follows:

> Unless you dispute the validity of this debt, or any portion thereof, within 30 days after receipt of this notice, we will assume that this debt is valid. If you notify us in writing, within this 30-day period, that the debt or any portion thereof is disputed, we will obtain written verification of the debt or a copy of a judgment against you, if any, and a copy of such judgment or verification will be mailed to you. In addition, upon your written request within the 30-day period, we will provide you with the name and address of the original creditor, if different from the current creditor.
>
> New York City Department of Consumer Affairs License #1160907
>
> **THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT. ALL INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**
>
> Prescriptions Filled After Coverage Termination
>
> | Fill Date | Pharmacy ID | Pharmacy Name | Rx Number | Drug Code | Qty | Days Supply | Amount Paid |
> |---|---|---|---|---|---|---|---|
> | 11/09/2014 | 3328677 | DUANE READE #0168 | ▇ | ▇ | ▇ | ▇ | 154.17 |
> | 11/24/2014 | 3353101 | DUANE READE #0151 | ▇ | ▇ | ▇ | ▇ | 542.45 |
> |  |  |  |  |  |  | TOTAL AMOUNT DUE: | $ 696.62 |

Dkt. 1, Ex. B ("Validation Notice").

The validation notice stated that RFS would assume that the debt was valid unless the recipient "notif[ied]" RFS, in writing and within 30 days, "that the debt or any portion thereof is disputed." *Id.* The validation notice then stated that the communication was "from a debt collector and is an attempt to collect a debt," and it provided details of both prescriptions that Papetti had filled at Duane Reade. *Id.*

The validation notice was enclosed in the same envelope as the debt collection letter, but it does not appear that it was stapled or otherwise affixed to the collection letter. *See* Compl. ¶ 38. As is evident, unlike the collection letter, the validation notice did not contain the RFS letterhead, nor was it addressed to Papetti.

### B. Procedural Background

On April 15, 2015, Papetti filed the Complaint, alleging that RFS violated the FDCPA on two grounds: by (1) failing to effectively provide a validation notice, in violation of 15 U.S.C. § 1692g, and (2) using a "false, deceptive, or misleading representation or means in connection with the collection of any debt," in contravention of 15 U.S.C. § 1692e. Compl. ¶ 42.

On May 12, 2015, RFS moved to dismiss the Complaint, and filed a brief and declaration in support of its motion. Dkt. 10–12. RFS argued that it did not violate the FDCPA on either ground. Dkt. 12 ("RFS Br."). On June 3, 2015, Papetti filed a brief in opposition. Dkt. 15 ("Papetti Br."). On June 8, 2015, RFS filed a reply brief in further support of its motion to dismiss. Dkt. 18 ("RFS Reply Br."). And on June 11, 2015, with leave of the Court, Papetti filed a limited sur-reply. Dkt. 25 ("Papetti Sur-Reply").

## II.   Applicable Legal Standards

On a motion to dismiss, the Court must accept the factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  The Court may look to the complaint as well as to any documents attached to it as exhibits or incorporated by reference.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  To survive a motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim for relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning that the complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and not merely an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Further, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Ultimately, if the plaintiff's claims have not been "nudged . . . across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

### III. Discussion

#### A. The Fair Debt Collection Practices Act

Congress enacted the FDCPA in 1977 in response to evidence of widespread abuses in debt collection practices, 15 U.S.C. § 1692(a), finding that "less ethical debt collectors threaten[ed] consumers with violence, use[d] profane or obscene language, ma[de] telephone calls at unreasonable hours, impersonate[d] public officials and lawyers, disclose[d] debtors' personal affairs to employers and engage[d] in other sorts of unscrupulous practices." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996) (citing S. Rep. No. 95-382, 95th Cong., 1st Sess. 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696).  The FDCPA aimed to eliminate such practices by barring the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," and by setting forth a non-exhaustive list of practices that fall within this category.  15 U.S.C. § 1692e; *see also Jacobson v. Healthcare Fin. Servs.*

*Inc.*, 516 F.3d 85, 91 (2d Cir. 2008) ("[T]he [FDCPA]'s overarching purpose [is that] of deterring deceptive conduct.").

In applying the FDCPA, the Second Circuit has stated that "the Act is primarily a consumer protection statute, and [it has] consistently interpreted the statute with that congressional object in mind." *Id.* at 96. Thus, in assessing whether a debt collector has violated the FDCPA, courts apply an objective standard based on how the "least sophisticated consumer" would interpret the communication in question. *Id.* at 90; *see also, e.g.*, *Russell*, 74 F.3d. at 34 (holding that "the test is how the least sophisticated consumer . . . understands the notice he or she receives"); *Kramsky v. Mark L. Nichter, P.C.*, 166 F. Supp. 2d 912, 915 (S.D.N.Y. 2001) ("To effectuate Congress's intent to protect consumers from abusive, manipulative, or confusing debt collection practices, the Second Circuit examines FDCPA claims under the objective 'least sophisticated consumer standard.'"). This approach "is grounded, quite sensibly, in the assumption that consumers of below-average sophistication or intelligence are especially vulnerable to fraudulent schemes." *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993). This objective standard serves the twin purposes of "(1) ensur[ing] the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protect[ing] debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Id.* at 1320.

The FDCPA is a strict liability statute. *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010). Therefore, a single violation is sufficient to establish liability, *see Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993), and the statute does not require a showing that the debt collector engaged in intentional conduct, *see Russell*, 74 F.3d at 33.

Rather, "the degree of a defendant's culpability may only be considered in computing damages." *Ellis*, 591 F.3d at 135 (quoting *Bentley*, 6 F.3d at 63) (internal quotation marks omitted).

In a further effort to protect consumers, the FDCPA establishes certain specific rights of consumers. Relevant to this motion, the FDCPA "gives the consumer the right to dispute a debt claimed by a debt collector." *Jacobson*, 516 F.3d at 89. If, within 30 days of receiving the collection letter, the consumer notifies the debt collector in writing that she disputes the validity of any portion of the debt, the debt collector must stop collection activity, and cannot resume until it has "obtained verification . . . and has mailed a copy of the verification to the consumer." *Id.*; *see also* 15 U.S.C. § 1692g(b). The FDCPA does not assume that the consumer "is aware of her right to require verification of the debt. Instead, the Act requires the debt collector, as the party in the better position to know the law, to inform the consumer of that right." *Jacobson*, 516 F.3d at 90. Thus, the FDCPA states that the debt collector must, in the form of a validation notice, "give[] the consumer the information necessary to challenge the debt allegedly owed before making payment," *Russell*, 74 F.3d at 32–33, which includes the amount of the consumer's debt, the channels available to dispute it, and the identity of the creditor, *see* 15 U.S.C. § 1692g. The debt collector must send this validation notice "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt." *Id*. The Second Circuit has held that even if a debt collector provides the consumer with such a validation notice, the collector may still violate the FDCPA when its communication "contains language that 'overshadows or contradicts' other language informing a consumer of her rights," which, as a result, would make the least sophisticated consumer "uncertain" as to those rights. *Russell*, 74 F.3d at 34–35 (quoting *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991)); *see also Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998); *Clomon*, 988 F.2d at 1319.

B.  Analysis

Generally, to recover under the FDCPA, the plaintiff must satisfy three threshold requirements: "(1) the plaintiff must be a 'consumer,' (2) the defendant must be a 'debt collector,' and (3) the defendant must have committed some act or omission in violation of the FDCPA." *Suquilanda v. Cohen & Slamowitz, LLP*, No. 10 Civ. 5868 (PKC), 2011 WL 4344044, at *3 (S.D.N.Y. Sep. 8, 2011); *see also Hess v. Cohen & Slamowitz LLP*, 637 F.3d 117, 120 (2d Cir. 2011). The first two requirements are not in dispute on this motion, *see* Compl. ¶¶ 6, 9; only the third is.

As to the third requirement, Papetti argues that RFS's debt collection letter violated two sections of the FDCPA. Papetti Br. 2. First, it violated § 1692g because the least sophisticated consumer would have been left uncertain as to his right to dispute the validity of the debt by, *inter alia*, the separate enclosure of the validation notice, despite the debt collection letter's indication that it was printed on the reverse side. *Id.* at 9. Second, RFS violated § 1692e because the least sophisticated consumer could have reasonably interpreted the debt collection letter in two or more different ways, one of which was inaccurate, thereby rendering the letter deceptive within the meaning of the FDCPA. *Id.* at 10–11.

1.  The Alleged Violation of § 1692g

As noted, the FDCPA requires that a debt collector, when seeking payment, provide the consumer with a detailed validation notice pursuant to § 1692g(a). The validation notice must, using unambiguous language, clearly inform the consumer of his rights; it is "not enough for a debt collection agency simply to include the proper debt validation notice in a mailing to a consumer—Congress intended that such notice be *clearly* conveyed." *Russell*, 74 F.3d at 35 (emphasis added); *see also Jacobson*, 516 F.3d at 90 (noting that debt collector "has the

obligation, not just to convey the information, but to convey it clearly"). The Second Circuit "recognize[s] there are many cunning ways to circumvent § 1692g under cover of technical compliance, but purported compliance with the form of the statute should not be given sanction at the expense of the substance of the Act." *Russell*, 74 F.3d at 35 (internal citations omitted). Thus, a validation notice violates the FDCPA if it contains "language that 'overshadows or contradicts' other language informing a consumer" of her right to dispute the validity of the debt, such that the least sophisticated consumer becomes "uncertain as to her rights." *Id.* at 34–35 (quoting *Graziano*, 950 F.2d at 111); *see also Jacobson*, 516 F.3d at 90.

As explained below, the Court holds that Papetti has stated a claim for a violation of § 1692g because of the combination of multiple shortcomings in RFS's communications, the central one being the errant "misdirection" in the debt collection letter ("**SEE REVERSE SIDE FOR IMPORTANT INFORMATION**").

RFS's debt collection letter establishes, among other things, that (1) Papetti has a debt that is "**OVERDUE**," (2) "**Oxford is due full reimbursement of the amounts paid**," (3) RFS has "not yet received payment," and (4) there appear to be multiple "payment options available to [Papetti]." Debt Collection Letter. RFS's letter then instructs the recipient to turn to the "reverse side" for "important information." *Id.* But no such information is there—the reverse side is blank. Compl. ¶ 37. The validation notice is plainly printed in the wrong location. The parties have cited, and the Court has found, no cases in which this specific practice has been used. The Court's judgment, however, is that this "misdirection"—whether intentional or incidental—is problematic under the FDCPA.

As the Second Circuit has noted, debt collectors should expect the consumer to follow clear instructions in debt collection letters. For instance, in *McStay v. I.C. System, Inc.*, the

Circuit held that "when a prominent instruction in the body of the letter warns that there is important information on the reverse side, a reasonable reader, even if unsophisticated, would turn the paper over and read the back." 308 F.3d 188, 191 (2d Cir. 2002). Similarly, in *Miller v. Wolpoff & Abramson, L.L.P.*, the court emphasized that the consumer had been "directed to the correct validation notice in several places" so as to advise her of her rights. 321 F.3d 292, 310 (2d Cir. 2003) (finding no statutory violation where a debt collector's letter referred to an important notice on the back, where the validation notice was in fact located).[3]

The consumer, once misdirected to turn to the reverse side of the letter to find "important information," cannot be expected to know, with certainty, that the separately enclosed document in fact contains this "important information." The consumer cannot even be expected to know what the undescribed "important information" is. The Second Circuit has held that a debt collector may not assume that the consumer is aware of her right to dispute the validity of the debt at all; thus, the debt collector, "as the party in the better position to know the law," must clearly inform the consumer of such a right. *Jacobson*, 516 F.3d at 90.

Here, RFS had the responsibility to clearly convey to Papetti his right to dispute the validity of his debt. This included placing the relevant information in the location that RFS chose to specify—indeed, RFS chose to specify that location in prominent type. *Clomon*, 988 F.2d at 1319 ("Courts have found collection notices misleading where they employ formats . . . which tend to obscure important information that appears in the notice.").

---

[3] This emphasis on precision makes sense: A debt collection letter is a short document with various legalistic disclaimers (*e.g.*, "this communication is from a debt collector," Validation Notice). It is neither unrealistic nor unfair to require the entity that knows both parties' rights to convey them clearly and accurately, *see Jacobson*, 516 F.3d at 90, especially given that the entire document is only one or two pages.

In this Court's view, a typical recipient of RFS's communications could be left with any of several reasonable conclusions upon reading the letter. These include the following: (1) he could assume that he had *not* received the "important information" due to RFS's printing or mailing error; (2) he could be *unsure whether* he had received the "important information," and thus might, for instance, call RFS to inquire about his rights and repayment options; or (3) he could assume that RFS had made a mistake and, in fact, the "important information" was on the separately enclosed page. RFS, of course, urges the third reading, and it is surely a reading at which a recipient could arrive. But it would be reasonable, too, to draw the other two readings. And under either, the consumer would be left unsure as to the nature and scope of his rights, whether to credit the validation notice, and whether he had received all the information he was intended to receive—and to which he was entitled. But under the statute, the consumer should not need to guess; information must be conveyed "clearly and effectively." *Savino*, 164 F.3d at 85; *see also Jacobson*, 516 F.3d at 90; *Russell*, 74 F.3d at 35. Where, as here, a consumer may be left confused as among different reasonable interpretations, he has a valid claim under the FDCPA. *See, e.g.*, *Savino*, 164 F.3d at 85. And where, as here, the debt collector prominently, and erroneously, draws the consumer's attention away from the information conveying *the consumer's rights*, the consumer has a valid claim for overshadowing. *Cf. Jacobson*, 516 F.3d at 91; *Russell*, 74 F.3d at 35.

Furthermore, it is significant here that several other aspects of the RFS's communications arguably exacerbated the "misdirection." *Cf. Gervais v. Riddle & Assocs., P.C.*, 479 F. Supp. 2d 270, 275 (D. Conn. 2007) (examining wording of collection letter "in light of the surrounding circumstances"). First, the two sheets of paper here were not paginated; had they been consecutively paginated, this would have suggested that they were meant to follow one another.

13

Second, the two sheets of paper here did not contain the same letterhead—the debt collection letter is indisputably from RFS, and was indisputably directed to Papetti; but the validation notice lacks either of their names.  Third, RFS did not place any indication at the top of the validation notice to indicate that it contained the "**important information**" to which the debt collection letter referred; that, too, would have helped link the two documents in the reader's mind.  *See Miller*, 321 F.3d at 297 (upholding a debt collection letter that stated, "BEFORE RESPONDING TO THIS LETTER SEE REVERSE SIDE FOR IMPORTANT NOTICE," when the reverse side contained a header that indicated it was the "**IMPORTANT NOTICE**").  Fourth, there was no transitional language of any kind (*e.g.*, "Continued from prior page").  And fifth, the documents were not stapled together; had they been, this perhaps could have suggested that these documents were deliberately sent together.[4]  Such reasoning tracks the analytic approach the Second Circuit has taken, using similar "hypothetical improvements" to debt collection communications, including the "transitional language" point, to illustrate why a particular communication violated the FDCPA.[5]  Thus, the overall format and structure of the RFS communications exacerbates the confusion caused by the misdirection.  *See Clomon*, 988 F.2d at 1319 (format of letter can contribute to violation).

---

[4] The Court is *not* holding that any of these changes to RFS's communications would, on their own, have ensured compliance with the FDCPA.  But these changes would have made these communications more comprehensible.

[5] *See, e.g.*, *Savino*, 164 F.3d at 85–86 ("In reaching this conclusion, we emphasize that CCI's request for immediate payment did not, standing alone, violate the FDCPA.  Rather, CCI's violation of the Act consisted of its decision to ask for immediate payment without also explaining that its demand did not override the consumer's rights under Section 1962g to seek validation of the debt.  CCI could have both sought immediate payment and complied with the Act simply by inserting into the text of its letter transitional language that referred the addressee to the validation notice.  For example, CCI might have added one of the following paragraphs to its demand letter . . . .").

In sum, Papetti has stated a claim because RFS's debt collection letter "fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights." *Savino*, 164 F.3d at 85; *accord Jacobson*, 516 F.3d at 90; *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) ("Even if a debt collector conveys the required information, the collector nonetheless violates the Act if it conveys that information in a confusing or contradictory fashion so as to cloud the required message with uncertainty.").

RFS makes three arguments in opposition. None is persuasive. The first is that, based on Papetti's Complaint, "there is no question that PAPETTI saw the validation notice, knew it was a validation notice, and read the validation notice." RFS Br. 13 (citing Compl. ¶ 39). This is irrelevant. The question is not whether Papetti subjectively understood the notice; it is whether the least sophisticated consumer, objectively, would understand the notice. *See Jacobson*, 516 F.3d at 91 ("In order to prevail, it is not necessary for a plaintiff to show that she herself was confused by the communication she received; it is sufficient for a plaintiff to demonstrate that the least sophisticated consumer would be confused.").

RFS's second argument is that "it is not unreasonable to require, even the least sophisticated consumer, to read collection notices with some care," and that here, the validation notice clearly conveys the required information to the consumer. RFS Br. 13. RFS's principle is correct: Even the least sophisticated consumer must read collection notices with some care. *See, e.g.*, *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005). But, assuming that the least sophisticated consumer exercised such care, he would notice that the debt collector in this case had not. He would notice an error—a blank page where he was supposed to

15

find "important information." And he would likely be left uncertain whether he indeed possessed whatever the "important information" was.

RFS's third argument is that the case law permits its manner of presentation, because the Second Circuit has approved placing the validation notice on the *reverse* side of the debt collection letter, *see McStay*, 308 F.3d at 191, and the Eastern District of New York has approved of placing the validation notice on a *separate page*, *see Cavallaro v. Law Office of Shapiro & Kreisman*, 933 F. Supp. 1148, 1151 (E.D.N.Y. 1996). RFS Reply Br. 4–6. Both cases, however, are easily distinguished.

In *McStay*, the debt collection letter explicitly instructed the recipient, as in this case, to "**SEE REVERSE SIDE FOR IMPORTANT INFORMATION**". 308 F.3d at 189. Unlike here, however, the reverse side was indeed where the validation notice was: "The reverse side contained, in larger size print than the front of the letter, the following language, known as the 'validation notice.'" *Id.* The Circuit approved this practice: "[W]e hold that when a prominent instruction in the body of the letter warns that there is important information on the reverse side, a reasonable reader, even if unsophisticated, would turn the paper over and read the back." *Id.* at 191. Thus, in *McStay*—unlike in this case—a consumer who followed clear directions could be confident that he had received all relevant information.

Similarly, in *Cavallaro*, the Eastern District of New York approved of providing a validation notice in a separately enclosed document where that document was, as in this case, the only other document in the envelope. 933 F. Supp. at 1153–54. But there was no "misdirection" in *Cavallaro*, and—unlike in this case—the other aspects of the validation notice helped ensure that the consumer knew that the second sheet of paper had important information: The validation notice named the creditor, clearly stated the amount of the debt, was specifically

16

addressed to the plaintiff, and was marked "Notice." *Id.* at 1151, 1153–54. The text and context of the communications in *Cavallaro* therefore differ importantly from those in this case. In sum, all of RFS's arguments are unconvincing.[6]

The Court therefore finds that Papetti has stated a claim for violation of § 1692g.

### 2. The Alleged Violation of § 1692e

The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This provision, too, is evaluated from the perspective of the least sophisticated consumer. *See, e.g.*, *Bentley*, 6 F.3d at 62; *Clomon*, 988 F.2d at 1318. The Second Circuit has noted "the broad sweep of this provision," stating that "it should be emphasized that the use of *any* false, deceptive, or misleading representation in a collection letter violates § 1692e—regardless of whether the representation in question violates a particular subsection of that provision." *Clomon*, 988 F.2d at 1320. The Second Circuit has held that, typically, a debt collection letter "is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Russell*, 74 F.3d at 35 (citing *Clomon*, 988 F.2d at 1319). However, courts may consider only *reasonable* interpretations in making such a determination, as the least sophisticated consumer

---

[6] RFS also points out, *see* RFS Reply Br. 7, that its communications differ from those in cases where courts found violations of § 1692g based on the fact that the debt collector had "buried" the validation notice in the middle of a packet of papers. *See, e.g.*, *Law Offices of David J. Stern, P.A. v. Martinez (In re Martinez)*, 271 B.R. 696, 701 (S.D. Fla. 2001), *aff'd*, 311 F.3d 1272 (11th Cir. 2002) (validation notice violated § 1692g when printed on page eight of a 16-page document); *Carbajal v. Capital One, F.S.B.*, No. 03 Civ. 1123 (MFK), 2003 WL 22595265, *3 (N.D. Ill. Nov. 10, 2003) (validation notice was "buried in a flurry of papers and other disclosures"). RFS's communications are, indeed, different from the communications in those cases. But that is not the test. Both practices—"burying" and "misdirecting"—lead to viable FDCPA claims because both leave consumers uncertain as to their rights. *See Russell*, 74 F.3d at 35 ("[T]here are many cunning ways to circumvent § 1692g under cover of technical compliance, but purported compliance with the form of the statute should not be given sanction at the expense of the substance of the Act.") (internal citations omitted).

17

standard "does not extend to every bizarre or idiosyncratic interpretation by a debtor." *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 237 (2d Cir. 1998) (citation and internal quotation marks omitted); *see also Clomon*, 988 F.2d at 1319 ("[C]ourts have consistently applied the least-sophisticated-consumer standard in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices.").

Significantly, courts in this Circuit have held that "the standard for determining a violation of § 1692e(10) is essentially the same as that for § 1692g." *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 666–67 (S.D.N.Y. 2006); *see also Russell*, 74 F.3d at 35; *Vera v. Trans-Cont'l Credit & Collection Corp.*, No. 98 Civ. 1866 (DC), 1999 WL 163162, at *4 (S.D.N.Y. Mar. 24, 1999) ("For essentially the same reasons that [the Court] conclude[s] that the debt violation notice violates § 1692g(a)(3), [it] also conclude[s] that the notice violates § 1692e(10)."); *Tipping-Lipshie v. Riddle*, No. 99 Civ. 4646 (LDW), 2000 WL 33963916, at *4 (E.D.N.Y. Mar. 2, 2000) (citing *Vera* for proposition that a "misleading validation notice violates both sections 1692g and 1692e(10)").

Consistent with this precedent, the Court concludes that Papetti has stated a claim for a violation of § 1692e, as well. As explained in the preceding section, there are at least three reasonable ways to construe RFS's communications, two of which are inaccurate. *See supra*, pp. 13–15. Papetti therefore has stated a claim. *Russell*, 74 F.3d at 35; *Clomon*, 988 F.2d at 1319; *Foti*, 424 F. Supp. 2d at 666–67. And, as discussed, the two inaccurate interpretations are reasonably arrived at because the consumer's understandable confusion is due to following the debt collector's clear directions. *See Miller*, 321 F.3d at 310; *McStay*, 308 F.3d at 191.

Separately, the Court is troubled by the distinction in clarity between the "*you owe us*" portion of the letter and the "*here are your rights*" portion of the letter. Here, the debt collector

states—in clear and unmistakable language, and often in prominent typeface—that the consumer owes a debt (*e.g.*, "**ACCOUNT OVERDUE**"; "**Oxford is due full reimbursement of the amounts paid**"; "we have not yet received payment"). Debt Collection Letter. However, when it came time to inform the consumer of *his* rights, he is misdirected. *Id.* Papetti, in challenging this communication, validly asserts a claim for a deceptive and misleading practice.

RFS's motion to dismiss the Complaint is, accordingly, denied in full.[7]

## CONCLUSION

For the foregoing reasons, the Court denies RFS's motion to dismiss. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 10.

This case will now proceed to discovery. By **August 12, 2015**, the parties shall jointly submit a proposed case management plan, consistent with the Court's individual practices, *see* http://www.nysd.uscourts.gov/judge/Engelmayer, contemplating the close of fact discovery by December 14, 2015.

Finally, the Court notes that Papetti has also filed a motion for class certification in this case, *see* Dkt. 3, but he has requested that briefing on that motion "be stayed pending discovery as to class issues." Dkt. 4, at 1. In their proposed case management plan, the parties shall address their preferred timing as to the briefing of this motion.

---

[7] Because the Court has concluded that Papetti's Complaint states a claim for violations of both § 1692e and § 1692g, it is unnecessary at this time to address whether the Complaint states a claim for the *additional* reason that, given the language of the debt collection letter, the least sophisticated consumer could be led to believe that there are *alternative* methods for disputing the validity of the debt when, in fact, there is only one such method. *See, e.g.*, RFS Br. 7–9; Papetti Br. 6–7.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: August 5, 2015
      New York, New York